UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL CULLISON, JR., and AMBER CULLISON, | ) ) ) | CIV.  09-4122-KES |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| HILTI, INC., | ) ) | |
| Defendant. | ) | |

Plaintiffs, Michael Cullison, Jr., and Amber Cullison, filed a tort action alleging strict liability claims and seeking compensatory and punitive damages against defendant, Hilti, Inc., after Michael injured his left eye while using one of Hilti's products. Amber also claims a loss of consortium. Hilti moves for partial summary judgment on the Cullisons' punitive damages claim. The Cullisons resist. The motion is granted.

## BACKGROUND

The pertinent facts to this motion, in the light most favorable to the Cullisons, the nonmoving party, are as follows:

Michael worked as a steel stud framer for Dave Kramer Drywall. On July 18, 2006, Michael was working with Jon Rotert at the construction site of the Sunshine Food Store in Sioux Falls, South Dakota, to erect the steel framing for the store.

Rotert used a DX350 Hilti Powder Actuated tool to shoot steel pins into the steel tracking. Michael assisted Rotert by holding the steel track so that Rotert could fasten the track to the I-beam. Michael wore safety glasses that he found in the DX350 case. While Hilti provided safety glasses for the DX350, the DX350 manual says that "suitable protective goggles" should be used when operating the tool.

At the time of the incident, Michael stood five to six feet behind Rotert. When Rotert shot the DX350 gun, a steel pin fragmented and a small shard entered Michael's left eye. Michael underwent surgery to remove the fragment. He has continued to experience trouble with vision in his left eye.

On December 11, 2006, an individual in Nevada was struck by an object in the face while using a Hilti DX76 tool. On January 13, 2010, a nail deflected off of a concrete floor and struck an individual in the cheek in Texas while a Hilti product was being used. *See* Docket 53-2. Hilti received notice that both of these incidents occurred.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court views the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted). The nonmoving party also receives "the benefit of all reasonable inferences to be drawn from the underlying facts" in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## DISCUSSION

Hilti argues that the Cullisons have offered insufficient evidence to sustain their punitive damages claim. South Dakota allows plaintiffs, in certain circumstances, to recover punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991). A plaintiff claiming punitive damages must show that "the defendant has been guilty of oppression, fraud, or malice, actual or presumed." SDCL 21-3-2. If the plaintiff makes this showing, "the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." *Id.* To survive summary judgment, a plaintiff must

prove to the court by clear and convincing evidence that a reasonable basis exists upon which a jury could award punitive damages. *Dahl*, 474 N.W.2d at 902 (citing *Flockhart v. Wyant*, 467 N.W.2d 473, 475 (S.D. 1991)).

The plaintiff must show that the defendant acted with "either actual, malice in fact, or presumed, legal malice." *Id.* at 900. "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person." *Id.* (citing *Gamble v. Keyes*, 178 N.W. 870, 872 (S.D. 1920)). "Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts." *Id.* (citing *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). An inference of presumed malice may be made when the person acts willfully or wantonly and injures another. *Id.*

In *Berry v. Risdall*, 576 N.W.2d 1 (S.D. 1998), the South Dakota Supreme Court addressed when punitive damages are appropriate in a negligence case:

> "There must be facts that would show that defendant intentionally did something . . . which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the plaintiff."

*Id.* at 9 (quoting *Tranby v. Brodock*, 348 N.W.2d 58, 61 (S.D. 1984)). " 'South Dakota requires more egregious conduct than states which merely require proof of gross negligence and states which require proof of conduct more

4

egregious than gross negligence, but which do not require proof of malice. Thus, South Dakota is among the states having the most stringent conduct requirement.' " *Suhn v. Breg, Inc.*, No. 08-cv-4190, 2010 WL 5301043, at *6 (D.S.D. Dec. 20, 2010) (quoting *Bierle v. Liberty Mut. Ins. Co.*, 792 F. Supp. 687, 692 (D.S.D.1992)).

In their complaint, the Cullisons state that Hilti "knew there were no warnings and instructions for use advising users of powder actuated tools that the safety glasses [Hilti] provided as a part of the product were inappropriate and dangerous for usage with powder actuated tools . . . and that safety goggles were the appropriate eye protection." Docket 50 at 2. In opposition to Hilti's motion for partial summary judgment, the Cullisons offer the Hilti DX350's user manual as evidence, Docket 53-1, but they do not explain how the manual pertains to their punitive damages claim. *See* Docket 54.

As a safety precaution, the manual provides the following warning: "The operator, and any other persons in the immediate vicinity, must wear suitable protective goggles and a helmet while the tool is in use." Docket 43-1 at 3. Hilti provided safety glasses, not goggles, with the Hilti DX350. Hilti disputes "the extent of knowledge and input offered by distributor Hilti, Inc. as to the precise language used in the operator's manual," because "Vice President of Product Safety, Marty Schofield, testified that he does not author the operator's

5

manual, but provides input that may be accepted or rejected by the parent corporation." Docket 57 at 4 n.1.

The Cullisons also offer evidence that Hilti knew about two other incidents involving its products that occurred in December of 2006, when an individual was struck in the face while using a Hilti tool, and January of 2010, when an individual was struck in the cheek while using a Hilti tool. The Cullisons argue that punitive damages are appropriate because, like the manufacturer in *Holmes v. Wegman Oil Co.*, 492 N.W.2d 107 (S.D. 1992), Hilti engaged in fraud and deceit "in failing to provide the appropriate safety equipment for usage with the product and instead providing defective safety equipment not recommended for usage with the product[.]" Docket 54 at 1-2.

In *Holmes*, the manufacturer recalled knobs for a defective water heater ten years after it learned that the knobs were defective. 492 N.W.2d at 109. The South Dakota Supreme Court upheld a jury's award of punitive damages and reasoned that the manufacturer "knew of the potential danger of explosion from the control knob for ten years prior to deciding to recall it," the manufacturer did not issue warnings to people who already owned the defective knobs, and the manufacturer instructed its personnel to "address potential liability from these control explosions with 'the foregone conclusion that we are not involved.'" *Id.* at 113. The manufacturer maintained these policies "through 22 explosions, 5 deaths and 19 injuries despite knowledge of the

6

potential dangers as early as 1969." *Id.* The court reasoned that the manufacturer fraudulently concealed the problems with the knob and acted with malice. *Id.*

Here, the two incidents disclosed by Hilti, which occurred in December of 2006 and January of 2010, post-date Michael's July 18, 2006, eye injury, and the January 13, 2010, incident post-dates even the filing of the Cullisons' lawsuit. In a product liability case, a plaintiff must offer evidence that the defendant had knowledge of problems with the product sufficiently prior to the plaintiff's injury to correct the alleged defect before a punitive damages claim may be submitted to the jury. *See Suhn,* 2010 WL 5301043, at *6 (granting summary judgment on the plaintiff's punitive damages claim and reasoning that the plaintiff "has not identified any evidence that [the defendant] was aware that its pain pumps actually caused [the injury] prior to [the plaintiff's] surgery.").

The DX350 manual states that the user should wear protective goggles as a safety measure. But Hilti provided protective glasses, not goggles, with the DX350. While a jury could find that Hilti's failure to provide goggles constitutes negligence, there are no facts in the record to suggest that Hilti's failure to provide goggles instead of safety glasses shows that Hilti intended to injure another person, acted with hatred or ill-will, or consciously realized that its conduct would, in all probability, produce the precise result of injuring

Michael's eye in the manner in which he was injured. While the Cullisons argue that Hilti acted fraudulently in failing to provide goggles with the DX350, they have not offered either evidence or argument as to how Hilti acted with any degree of fraud.

Because the Cullisons have offered no evidence that Hilti's failure to provide goggles instead of the allegedly defective safety glasses constitutes oppression, fraud, or malice, they have not met their burden to show, by clear and convincing evidence, that a reasonable basis exists for a jury to award punitive damages. Thus, summary judgment is granted on their punitive damages claim. Accordingly, it is

ORDERED that defendant's motion for partial summary judgment on punitive damages (Docket 47) is granted.

Dated October 12, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE